**In re PAINE WEBBER QUALIFIED PLAN PROPERTY FUND THREE, L.P. LITIGATION.**

Civ. A. No. 15292.

Court of Chancery of Delaware, New Castle County.

Submitted: Jan. 17, 1997.
Decided: Feb. 24, 1997.

R. Franklin Balotti, Jesse A. Finkelstein, Matthew J. Ferretti and Raymond J. DiCamillo, of Richards, Layton & Finger, Wilmington, for Defendants.

Stephen E. Jenkins, Philip Trainer, Jr. and John S. Grimm, of Ashby & Geddes, Wilmington, for Plaintiffs.

## OPINION

CHANDLER, Vice Chancellor.

Plaintiffs, limited partners of six defendant partnerships, assert statutory and contractual rights to lists of the limited partners. Lacking a proper purpose for their requests, plaintiffs have no statutory right to obtain the lists. Four partnership agreements, however, provide plaintiffs with a contractual right to obtain the lists without showing that their purpose is proper.

## I. BACKGROUND

Plaintiffs, Gramercy Park Investments, L.P. ("Gramercy") and Lexington Family Investments, L.L.C. ("Lexington"), are limited partners in six Paine Webber partnerships: Paine Webber's Qualified Two, Three and Four, Paine Webber's Income Five and Eight, and Paine Webber's Mortgage Five.[1] In October and November 1996, plaintiffs sent demand letters to the defendants' general partners requesting the partnership lists. Each of the six requests was rejected. Defendants contend that the requests were

rightfully rejected because plaintiffs are required to have a proper purpose for requesting the lists, plaintiffs do not have such a purpose, and even if they did, defendants' fiduciary and contractual duties justified their refusal to provide the lists. Thus, the issues before me are whether plaintiffs' purpose is proper and, if so, whether the defendants may still rightfully deny the requests.

## II. ANALYSIS

### A. Plaintiffs' Purpose

Each demand letter asserted that plaintiffs' purpose in requesting the lists was to assist the plaintiffs and their "affiliates in purchasing additional partnership interests."[2] With respect to this action, plaintiffs' affiliates are The Madison Avenue Capital Group, L.L.C. ("Madison") and any tendering entity that Madison may form to launch a tender offer for interests in the partnerships. Madison, formed in 1995 by Ronald M. Dickerman ("Dickerman") and Bryan Gordon ("Gordon") for the specific purpose of investing in limited partnerships, is Gramercy's only general partner and Lexington's managing member. Neither Gramercy nor Lexington have any employees. Thus, if plaintiffs are entitled to receive the lists, they will be provided to Dickerman and Gordon who have requested the lists in order to decide whether to initiate tender offers for 4.9 percent of the interests in each of the six partnerships. Since its formation in 1995, Madison has initiated fifty-two such tender offers, each for 4.9 percent of a partnership's interest.[3] Following its past practice, Madison will not launch the tender offer in its own name. Rather it will create a new entity, probably a limited liability company, to make the investment and hold the interests.[4] Thus, the tendering entity will apparently look much like Lexington—a limited liability company with interests in limited partnerships.

### B. The Statutory Right

■ Delaware's Revised Uniform Limited Partnership Act provides a limited partner

---

1. Lexington is a limited partner in Qualified Four. Gramercy is a limited partner in the other five.

2. *See* Demand Letters, J. Exs. 7–12.

3. Dickerman Dep. at 49.

4. *Id.* at 68, 102.

with a statutory right to obtain partnership lists upon showing that the partner's purpose for requesting the lists is proper—that it is "reasonably related to the limited partner's interest as a limited partner."[5] Plaintiffs in *In re Paine Webber Limited Partnerships*,[6] sought partnership lists for a reason almost identical to that asserted by Gramercy and Lexington. In that case, Vice Chancellor Jacobs found that plaintiffs' purpose was to provide the lists to an investment fund created by the plaintiffs' general partner, "in return for an equity participation in that fund, should it ever be created."[7] The Vice Chancellor noted that the plaintiffs had no intention of using the lists to increase their own interests in the partnerships, that plaintiffs' general partner and its president were using the plaintiffs "purely as a legal vehicle to obtain the lists,"[8] and that any tender offer would be conducted by a separate entity in which plaintiffs' equity participation, if any, would be minimal. Thus, he denied the plaintiffs' requests upon concluding that the plaintiffs' purpose related solely to the general partners' interest, and not to the plaintiffs' interest as limited partners.

As in *Paine Webber*, plaintiffs here do not intend to use the lists to increase their own interests in the partnerships. The lists will be provided to Dickerman and Gordon and, if a tender offer is launched, it will be conducted by a tendering entity created by Madison for the sole purpose of purchasing and holding the partnership interests. The plaintiffs' equity participation in the tender offer, if

any, would be limited.[9] Accordingly, plaintiffs' purpose is not a proper purpose as it does not relate to Gramercy's or Lexington's interest as a limited partner. Thus, plaintiffs do not have a statutory right to the partnership lists.

### C. The Contractual Right

■ Three of the six partnership agreements provide that "[a]ny partner, or his duly authorized representatives, upon paying the costs of collection, duplication and mailing, shall be entitled to a copy of the list of the names and addresses of the Limited Partners (including the number of Units owned by each of them)."[10] A fourth partnership provides the above right but adds "the dates on which the Managing General Partner received their subscriptions" to the information available.[11] These four partnership agreements do not explicitly condition plaintiffs' rights to the lists on the existence of a proper purpose.

Rights identical to these found in Qualified Two, Qualified Three, Qualified Four and Income Five were also addressed by Vice Chancellor Jacobs in *Paine Webber*.[12] There, as here, defendants argued that, even though the partnership agreements did not explicitly condition provision of the lists on the existence of a proper purpose, the Court should read into the agreements the proper purpose requirement of section 17–305. In support of this argument they assert that this Court, in *Schwartzberg v. CRITEF As-*

---

5. Section 17–305 provides, in part:

   Each limited partner has the right, subject to such reasonable standards (including standards governing what information and documents are to be furnished, at what time and location and at whose expense) as may be set forth in the partnership agreement or otherwise established by the general partners, *to* obtain from the general partners from time to time upon reasonable demand for any purpose reasonably related to the limited partner's interest as a limited partner:

   \* \* \* \*

   (3) A current list of the name and last known business, residence or mailing address of each partner

6. Del. Ch., Cons.C.A. No. 15043, Jacobs, V.C., 1996 WL 535403 (Sept. 17, 1996).

7. *Id.* at 7.

8. *Id.* at 8.

9. *Gordon Dep.* at 26.

10. *See* J. Ex. 1 at A–22, J. Ex. 2 at A–25, J. Ex. 3 at A–25 (partnership agreements for Qualified Two, Qualified Three, and Qualified Four).

11. *See* J. Ex. 4 at A–26 (partnership agreement for Income Five).

12. Two of the partnerships (Qualified Two and Qualified Three) were, in fact, two of the defendant partnerships in *Paine Webber*.

*socs. Ltd. Partnership,*[13] held that such a requirement should be read into an agreement, despite the fact that the agreement itself was silent on the issue,[14] and suggest that Vice Chancellor Jacobs erred in *Paine Webber* when he concluded that "*Schwartzberg* supports the proposition that this Court should not read § 17–305 into a partnership agreement that grants a limited partner access to partnership information without requiring a demonstration of proper purpose." I disagree with both assertions.

In *Schwartzberg,* Chancellor Allen addressed the conditions under which a partner may access business records when the asserted rights are based on the partnership agreements as well as statutory provisions governing the partner's rights as both a limited and a general partner. Discussing the rights asserted as a general partner, the Chancellor found that since neither the statutory provisions governing the rights of a general partner nor the partnerships' contractual provisions contained "an express limit concerning 'purpose,'" that the analysis of the claims *"must begin with the recognition that a [general] partner has no obligation to prove it has a 'proper purpose' in order to enforce one of these rights to the prescribed access."* [15] He also noted, however, that the *statutory* rights of a limited partner, in contrast, are conditioned upon the demonstration of a proper purpose.[16] He did not find that a limited partner's contractual rights are implicitly subject to the proper purpose requirement in section 17–305. Applying the Chancellor's reasoning to the issues before me, I must also begin with the recognition that plaintiffs are not required to demonstrate a proper purpose to enforce their contractual rights to the partnership lists be-

cause the partnership agreements of these four partnerships do not contain an express requirement concerning purpose.

■ The agreements of the remaining two partnerships, Mortgage Five and Income Eight, place conditions on a partner's ability to access the partnership lists. The agreement for Mortgage Five provides:

> Any partner, or his duly authorized representatives, upon paying the costs of collection, duplication and mailing, shall be entitled to a copy of the list of the names and addresses of the Limited Partners, *provided, however,* that as a condition to obtaining such list, the Managing General Partner may require a Partner to execute and deliver a representation to the effect that such Partner shall not use such list for the purpose of soliciting the Limited Partners for other than Partnership business.[17]

The conditions upon a limited partner's access to the partnership list of Income Eight are similar to the conditions provided in the agreement for Mortgage Five except that the representation must be "to the effect that such Partner shall not use such list for any purpose other than one related to the operation of the partnership." [18] Defendants contend, with respect to Income Eight, that a "list of limited partners may be inspected 'for any proper purpose reasonably related to the Partner's Interest in the Partnership.'" [19] An examination of the full sentence from which they quote, however, reveals that the "proper purpose" requirement refers to *books and records,* not the list of limited partners, the access requirements for which

---

**13.** *Schwartzberg v. CRITEF Assocs. Ltd. Partnership,* Del. Ch., 685 A.2d 365 (1996).

**14.** In support of this claim, they refer this Court to a footnote in *Schwartzberg* which states:

> As for the rights of a limited partner in a Delaware limited partnership, section 17–305 of the [Act] makes clear that a limited partner's right to inspect books and records and to otherwise access information regarding the partnership is limited to 'purpose[s] reasonably related to the limited partner's interest as a limited partner.' ... Thus, the limited partner must demonstrate a proper purpose in request-

ing such information. Plaintiff has clearly not done so here.
*Id.* at 375 n. 14.

**15.** *Id.* at 375.

**16.** *Id.* at 375 n. 14.

**17.** J. Ex. 5 at A–24.

**18.** J. Ex. 6 at A–28.

**19.** Defendants' Pretrial Br. at 13 (quoting to J. Ex. 6 at A–28).

are addressed separately in the agreement.[20] Neither agreement expressly requires the plaintiffs to demonstrate a proper purpose in order to obtain the lists. Thus, I do not find that plaintiffs' improper purpose *automatically* bars their access to the lists. Defendants, however, may condition plaintiffs' right to the lists upon receipt of a representation that plaintiffs will not use the lists to solicit partners except for matters relating to the business or operation of the partnership.

### D. The "Improper Purpose" Defense

Defendants argue that even if plaintiffs were otherwise entitled to the lists, that their request may be denied because the purpose is personal to the plaintiffs and is adverse to the partnership. Such a defense has been referred to as the "improper purpose defense." This name, however, is something of a misnomer. As noted by this Court in both *Schwartzberg* and *Paine Webber*,[21] the concept of a proper purpose, whether found in statute or contract, is different than the concept of a defense based upon a showing that the purpose is personal to the partner and adverse to the partnership. A showing that a purpose is personal and has adverse effects does not make that purpose "improper" and a request for access to a partnership list may be justifiably denied upon showing that the purpose is personal and has adverse effects regardless of whether that purpose is "proper." Thus, the basis of the defense is more appropriately characterized as founded on "personal and adverse effects" rather than on an "improper purpose." But, whatever the name, the defendants in *Paine Webber* and *Schwartzberg* raised the same defense.

In *Schwartzberg*, the Chancellor noted that contracts may, and under certain conditions should, contain implicit obligations consistent with written obligations and found that such obligations "may be inferred when, given the terms of the express contract made and the circumstances of the contracting process, it is more likely than not ... that if the parties *had* thought to address the subject, they would have agreed to create the obligation that is under consideration by the court *ex post facto*."[22] Applying this test, he reasoned that it could not be assumed "that rational negotiators would confer on managing partners discretion to determine what access would threaten harm to joint investment" and concluded that the court may deny access to business records when, "[i]n the absence of an explicit contractual provision or statutory language to the contrary ... a partner denying another partner access to partnership business records can show that the partner seeking access is doing so for a purpose personal to that partner and adverse to the interests of the partnership considered jointly."[23]

The same analysis was employed by Vice Chancellor Jacobs in *Paine Webber*. There, however, unlike the partnerships in *Schwartzberg*, the *Paine Webber* partnerships were formed prior to 1985, the year when the Delaware General Assembly amended the partnership law and no longer required partnerships to publicly file a list of partners along with the partnership certificate. As a result, the Vice Chancellor found that it was not possible to conclude that the negotiators of the partnership agreement, if they had addressed the subject, would have agreed more likely than not "to deny access to the lists that were already a matter of public record."[24] Accordingly, he deter-

---

**20.** The agreement for Income Eight provides that "[b]ooks and records of the Partnership ... shall be available for examination [by] any Partner or his duly authorized representatives at any and all reasonable times for any proper purpose reasonably related to the Partner's Interest in the Partnership." J. Ex. 6 at A–28.

**21.** *See Schwartzberg* at 374 (even if the Court were to assume that plaintiffs had established the right to the lists, defendants have established a separate defense which justifies denying access); *Paine Webber* at 15, n. 15 (noting the defense recognized by *Schwartzberg* is different than the

proper purpose requirement of section 17–305 and analogizing the authority of the Court to deny access to the lists, even in the face of clearly established rights, upon a showing of harm, to the authority of the Court to deny specific performance).

**22.** *Schwartzberg* at 376.

**23.** *Id.* at 377.

**24.** *Paine Webber* at 14.

mined that, in such a situation, the existence of a defense based upon personal and adverse effects could not be implied.

Each of the four partnerships for which I find that the plaintiffs have established a contractual right to the lists of limited partners were created prior to 1985. Here, as in *Paine Webber*, the plaintiffs' right to access these lists may not be curtailed by the defendants' assertion that the plaintiffs' purpose is personal and adverse to the interests of the partnership as a whole, even if such assertions were true. Therefore, I find it unnecessary to address defendants' contentions that plaintiffs' purpose is harmful to the partnership and find that plaintiffs are unconditionally entitled to the limited partner lists of Qualified Two, Qualified Three, Qualified Four and Income Five.

IT IS SO ORDERED.